# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**RONALD CHALMERS, et al.,**
         **Plaintiffs,**

v.                                                                  **Case No. 13-cv-686**

**OZAUKEE COUNTY, et al.,**
         **Defendants.**

_____

## **DECISION AND ORDER**

Plaintiffs Ron and Linda Chalmers and two of their daughters bring this § 1983 action alleging that defendants Ozaukee County and several of its employees violated their Fourth and Fourteenth Amendment rights when a county social worker interviewed two of Ron and Linda's children, Chelsey and Colten, and removed them from the home. Before me now is defendants' summary judgment motion.

## **I. Background**

Ron and Linda Chalmers have two biological children, daughters Shannon and Chelsey, and an adopted son, Colten. In July 2010, when Colten was 15 and Chelsey 16, defendant Molly Hubbell, an Ozaukee County social worker, received a report that Colten was being abused. Hubbell visited the Chalmers' home and interviewed Ron, Linda, and Colten, all of whom denied the allegations. Subsequently, Hubbell interviewed other family and family friends. In September 2010, Hubbell interviewed Colten again, this time at school, and also interviewed Chelsey at work. Hubbell conducted these interviews without the parents' knowledge or consent, but both children agreed to speak with her. The next day, Hubbell removed Colten and Chelsey from the home, and placed them in the home

of their half-sister, Linda's daughter from a previous relationship.[1] Two days later, a state court judge conducted a temporary physical custody (TPC) hearing and ordered the removal to continue. The County then filed petitions alleging the children to be in need of protection or services ("CHIPS"). The parents ultimately did not contest the petitions and voluntarily terminated their rights to Colten. Subsequently, plaintiffs brought this suit.

## II. Discussion

Summary judgment is required if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, I view the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable jury could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To prevail on their § 1983 claims, plaintiffs must show that defendants deprived them of a constitutional right while acting under color of state law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000). Defendants agree that they were acting under color of state law.

### A. Issue Preclusion

I first address whether the doctrine of issue preclusion bars plaintiffs from litigating whether defendants had probable cause to remove Chelsey and Colten from the Chalmers' home. This issue is important because probable cause is an element of several of plaintiffs' claims. Issue preclusion "prevents a party from relitigating an issue that it has previously litigated and lost." *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002). I must give state

---

[1] Plaintiffs allege that other named defendants were directly involved in the decisions to interview and remove the children.

court decisions the same preclusive effect as would a Wisconsin court. *Id.* Applying Wisconsin law, I ask: "(1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally unfair." *Aldrich v. Labor & Indus. Review Comm'n*, 341 Wis. 2d 36, 68 (2012). The first step requires me to determine whether probable cause was actually litigated and determined in the state court proceeding and, if so, whether the determination was essential to the judgment. *Id.* at 71.

At the September 2010 TPC hearing, the state court addressed probable cause when the Chalmers contested the "statutory basis for the removal." Lubinsky Aff. Ex. 17, at 4 (ECF No. 26-17). The court stated that "the information [the social worker] learned based on [her interviews with the children caused her] to take action. Her representations to the Court [are] because of what the children have informed her and . . . the Court will find that it was appropriate action and will continue the children's [out-of-home] placement." *Id.* at 13. The court then concluded that "based on the emergency type of situation . . . the Department was justified in the removal of the child[ren]." *Id.* at 14. Although the court did not use the words "probable cause," its conclusion that defendants were "justified" in removing the children based on the information they had obtained and that the situation was an "emergency" amounts to a determination of probable cause. Further, the determination was essential to the court's decision to keep the children in protective custody. *See* Wis. Stat. § 48.205(1) (authorizing a social worker to take a child into protective custody if there is probable cause to believe that otherwise, the child will be subject to injury, will be neglected or will run away); § 48.21(4) (authorizing a court at a

TPC hearing to continue protective custody under the same criteria specified in § 48.205). Therefore, I conclude that probable case was litigated in state court and essential to the judgment.

Turning to whether applying issue preclusion would be fundamentally fair, *Aldrich*, 34 Wis. 2d at 71 plaintiffs argue that it would not be. First, they contend that they were effectively precluded from appealing because an appeal from the TPC hearing would have been interlocutory, and appellate courts rarely consider interlocutory appeals, *State v. Aufderhaar*, 277 Wis. 2d 173, 184 (Ct. App. 2004), *rev'd on other grounds*, 283 Wis. 2d 336 (2005). However, plaintiffs did not try to appeal although they could have. *See* Wis. Stat. § 808.03(2) (allowing interlocutory appeals that "materially advance the termination of the litigation or clarify further proceedings" or "protect the petitioner from substantial or irreparable injury"). Plaintiffs also argue that the TPC hearing was lower in quality and less extensive than a hearing in federal court, *Aldrich*, 34 Wis. 2d at 77 (stating that such differences are a factor in the fundamental fairness analysis), because they had no opportunity to present evidence or cross-examine witnesses, *Bailey v. Andrews*, 811 F.2d 366, 370 (7th Cir. 1987) (stating that being able to present evidence and cross-examine is "of crucial importance in determining" whether a party had "a full and fair opportunity to litigate the probable cause issue"). Although the TPC hearing was not a full evidentiary hearing, plaintiffs' counsel raised legal and factual issues and the judge questioned Hubbell about those issues. Thus, this case differs from *Bailey*, where the arresting officer was not present at the probable cause hearing. *Id.* Further, plaintiffs subsequently filed a motion to dismiss the CHIPS petitions and had a hearing in which the issue raised–whether

4

the facts justified the court in maintaining jurisdiction and custody of the children–was factually identical to the probable cause issue. Thus, it would not be fundamentally unfair to plaintiffs to apply issue preclusion.

Although *Jensen* applied Illinois law on issue preclusion, the court stated that "the state court's probable cause determination [in a TPC hearing in a child welfare case] prevents us from reaching the merits of the case." 295 F.3d at 748, and the same reasoning is applicable here. *See Aldrich*, 341 Wis. 2d at 73 (noting that goals of issue preclusion are to avoid repetitive litigation and inconsistent judgments). Relitigation of probable cause would be repetitive and could lead to an inconsistent decision. Thus, the state court's finding that defendants had probable cause to remove Chelsey and Colten is controlling.

## B. Unreasonable Search Claim

Turning to the substance of plaintiffs' claims, Chelsey first contends that Hubbell's interview with her the day before Hubbell removed her from the home was an unreasonable search under the Fourth Amendment. However, Hubbell's questioning of Chelsey was not a search within the Fourth Amendment. "[Q]uestions are neither searches nor seizures," thus Hubbell need not "demonstrate justification for [the] inquiry." *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002); *see also Michael v. Gresbach*, 526 F.3d 1008, 1016 (7th Cir. 2008) (stating that an interview with a child as part of a child welfare investigation was a preliminary step short of a search).

## C. Unreasonable Seizure Claim

Chelsey also contends that Hubbell's removal of her was an unreasonable seizure

5

under the Fourth Amendment. To violate the Fourth Amendment a seizure must be unreasonable in light of the circumstances. *Brokaw*, 235 F.3d at 1010. "A seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances." *Id.*; *Siliven v. Ind. Dep't of Child Welfare Servs.*, 635 F.3d 921, 926–27 (7th Cir. 2011) ("Because defendants acted without a court order, the removal of [the child] can be considered reasonable only if defendants had probable cause or if exigent circumstances existed."). As discussed, the state court determined that defendants had probable cause to remove Chelsey, and that determination is controlling.

**D. Substantive Due Process Claim**

Plaintiffs allege that Hubbell's removal of Chelsey and Colten violated their right to familial integrity, a component of substantive due process. *Brokaw*, 235 F.3d at 1018. However, the right to familial integrity is not absolute but must be balanced against the state's interest in protecting children from abuse. *Siliven*, 635 F.3d at 928. "To maintain the appropriate balance, we require that caseworkers have 'evidence to support a "reasonable suspicion" of past or imminent abuse' before they may take a child into protective custody." *Id.* (quoting *Terry v. Richardson*, 346 F.3d 781, 787 (7th Cir. 2003)). Reasonable suspicion requires more than a hunch but less than probable cause. *Id*. The state court's probable cause finding is dispositive of this claim.

**E. Procedural Due Process Claim**

Plaintiffs also allege several procedural due process violations. Because plaintiffs have a liberty interest in familial integrity, I must determine what process was due, *Brokaw*, 235 F.3d at 1020. I do this by evaluating the private interests at issue, the government's

interests, and the risk of an erroneous deprivation of the private interest through the procedures used, *Doe v. Heck*, 327 F.3d 492, 527 (7th Cir. 2003).

Plaintiffs first contend that removing Chelsey and Colten without a court order or pre-removal hearing violated due process. A parent's rights "cannot be denied without an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Brokaw*, 235 F.3d at 1020 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). However, government officials may remove a child without a pre-removal hearing or court order if they have "probable cause to believe that the child is in imminent danger of abuse." *Hernandez v. Foster*, 657 F.3d 463, 486 (7th Cir. 2011). The state court determined that Hubbell could remove the children because the situation was an "emergency." Further, plaintiffs were afforded a prompt post-removal hearing. *Brokaw*, 235 F.3d at 1021 (stating that a constitutionally adequate post-deprivation hearing establishing probable cause prevents due process claims for lack of a pre-deprivation hearing).

Plaintiffs next argue that Hubbell's questioning of Chelsey and Colten without obtaining parental consent violated due process. Plaintiffs rely on *Doe v. Heck*, but the *Heck* court concluded that a search had occurred for purposes of the Fourth Amendment, while as noted above, Hubbell's interviews with Chelsey and Colten were not searches. Additionally, in *Heck* the interview took place at a private school and defendants "had no basis to suspect the plaintiff parents of child abuse." *Id.* at 525; *see also Gresbach*, 526 F.3d at 1011 (characterizing *Heck* as a case in which "a private school and its students had a reasonable expectation of privacy in and within the school's premises, and that therefore the caseworkers' warrantless search of the premises and seizure of the child in order to

7

conduct an interview for a child abuse investigation, without the consent of the child's parents or school officials, was presumptively unreasonable"). In the present case, however, Hubbell interviewed Colten in a public school thus a lower standard of scrutiny applies, *id.* at 1018, requiring neither probable cause nor parental consent. *Darrell H v. Coler*, 801 F.2d 893, 902 (7th Cir. 1986) (which involved a visual inspection of the child, not merely an interview). Further, Hubbell interviewed Chelsey outside McDonald's where Chelsey worked. Standing outside the entrance to a fast food establishment, Chelsey had a lower level of privacy than in *Heck*. Moreover, when Hubbell interviewed Chelsey, she had already interviewed Colten and had reason to believe that at a minimum Chelsey had been emotionally abused. Thus, *Heck* does not control, and Hubbell did not need parental consent.

Third, plaintiffs allege that defendants violated due process by failing to adequately investigate prior to removing the children.[2] However, plaintiffs offer no evidence to support this claim. Moreover, the record indicates that defendants conducted an ongoing investigation, beginning in July 2010 when Hubbell interviewed the family after receiving reports of abuse and neglect and continuing through September 2010, during which period she interviewed family, friends, and a social worker who had worked with Colten.

Fourth, plaintiffs allege that defendants violated due process by misrepresenting facts in order to secure the removal of Chelsey and Colten and continuing to misrepresent facts to keep the children in out-of-home placement. Due process "requires that

---

[2] Plaintiffs characterize this claim as a Fourth Amendment claim, but it is more appropriately analyzed as a procedural due process claim. *See Siliven*, 635 F.3d at 929 (quoting *Brokaw,* 23 F.3d at 1020)) ("In this circuit, due process requires, at a minimum, that government officials 'not remove a child from his home without an investigation.'").

government officials not misrepresent the facts in order to obtain the removal of a child from his parents," *Brokaw*, 235 F.3d at 1020, or in order to maintain continued out-of-home placement, *id.* at 1018–19. A challenge to the integrity of the evidence supporting probable cause is not precluded by the state court's probable cause determination. *Bailey*, 811 F.2d at 369–70 ("[A] defendant [is] not collaterally estopped from bringing a § 1983 action challenging the *integrity* of the evidence that was presented in a probable cause hearing."). The facts supporting probable cause need not be true, just known to the social worker and reasonably believed by her at the time she made them. *See Siliven*, 635 F.3d at 927. Thus, plaintiffs must show that Hubbell falsely represented the facts supporting removal and continued out-of-home placement.

Plaintiffs allege that, in support of removal, Hubbell stated that: (1) Linda punched Chelsey in the face even though Chelsey told her that Linda slapped her in the face; (2) Chelsey took NyQuil in an attempt to harm herself even though Chelsey told her that it was her sister Shannon who did this; (3) Colten continually had suicidal thoughts even though he told Hubbell that he only had those thoughts during the summer of seventh grade; (4) Linda gave Colten the silent treatment even though Colten did not tell her this. Plaintiffs provide some evidence, including Chelsey's testimony, that the children's statements to Hubbell differed from those that Hubbell conveyed. Plaintiffs also present evidence that Chelsey told Hubbell about these errors prior to the filing of the CHIPS petition and that Hubbell still used them to support CHIPS jurisdiction and continued out-of-home placement. Thus, a genuine issue of fact exists as to whether Hubbell knowingly made misrepresentations relating to the children's removal.

I next consider whether defendants have qualified immunity. The individual

defendants may be sued as individuals only if they violated clearly established federal law which they should have known about in 2010. *See Ienco v. City of Chi.*, 286 F.3d 994, 1000–01 (7th Cir. 2002). I have already established that plaintiffs have made out a constitutional violation, *id.*, and I also conclude that misrepresenting facts to secure removal and continued out-of-home placement of a child was a clearly established due process violation. *See Brokaw*, 235 F.3d at 1020 ("[Due process] requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents."). Thus, defendants are not entitled to qualified immunity.

I next turn to plaintiffs' *Monell* claims against Ozaukee County.[3] In order to sue a municipality under § 1983, plaintiffs must allege that the municipality's custom or policy caused the constitutional violation. *Petty v. City of Chi.*, 754 F.3d 416, 424 (7th Cir. 2014). The complaint alleges a policy or custom of "changing, manipulating and exaggerating the statements of children in order to present the appearance of child abuse that is not there," Compl., at 44 (ECF No. 1), but plaintiffs' response to defendants' summary judgment motion relating to *Monell* liability focuses exclusively on evidence supporting a policy or custom of removing children without court order or exigent circumstances. Thus, plaintiffs' *Monell* claim that Ozaukee County has a policy of misrepresenting facts in order to secure removal fails. *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (arguments not presented in response to summary judgment motions are waived).

Plaintiffs' complaint alleges numerous other unconstitutional policies and customs,

---

[3] Plaintiffs also sue the Ozaukee County Department of Human Services and the individual defendants in their official capacities, but I treat all of these claims as *Monell* claims against the County. *See Brokaw*, 235 F.3d at 1013.

most of which are based on their underlying constitutional claims discussed above. These *Monell* claims fail for the same reasons the underlying constitutional claims fail. *See Petty*, 654 F.3d at 424 ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.").

However, plaintiffs seem to allege a separate *Monell* violation based on failing to supervise children in foster care. This claim is based on an incident that occurred while Chelsey was in foster care, during which she was taken to a doctor, vaccinated, and given birth control pills and an anti-depressant without her parents' consent or knowledge. However, plaintiffs do not develop an argument as to the constitutional basis for this claim and do not respond to defendants' summary judgment argument. Thus, they waive this claim. *Caruso*, 197 F.3d at 1197. Additionally, the record indicates that the social worker who knew of the incident and failed to inform Chelsey's parents was removed from the Chalmers' case as soon as her supervisor found out and was later terminated, in part because of this incident, indicating that this was a single incident and not evidence of a broader policy or custom. Thus, this *Monell* claim fails as well. Because all of plaintiffs' *Monell* claims fail, it can no longer maintain claims against individual defendants in their official capacities or against Ozaukee County or its Department of Human Services.

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 23) is **GRANTED** as to plaintiffs' Fourth Amendment claims; substantive due process claims; and procedural due process claims based on lack of a pre-removal hearing, lack of parental consent before interviewing children, and failure to adequately investigate. The motion is **DENIED** as to plaintiffs' procedural due process claim based on

alleged misrepresentations made in support of removal and continued out-of-home placement. The Clerk shall terminate Ozaukee County and Ozaukee County Department of Human Services as parties in this action.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge