**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
_____

**RONALD CHALMERS, et al.,**

                         **Plaintiffs,**

**v.**                                           **Case No. 13-cv-0686**

**MARIAN BALLOS, et al.,**

                         **Defendants.**
_____

## DECISION AND ORDER

On October 29, 2015, the parties participated in a final pretrial conference, during which several issues arose. The parties have submitted additional briefing on these issues, and I address them now.

**A.**    **Elements of Plaintiffs' Procedural Due Process Claim**

This case arises from state court child protection proceedings in which two of plaintiffs' children were removed from their home. The only claim remaining is a procedural due process claim alleging that defendants misrepresented facts to the state court judge in order to justify removal. At the final pretrial conference, I concluded that in order to prevail on this claim, plaintiff need only show that the defendants made misrepresentations to the judge and that this was sufficient to recover nominal damages. I further stated that plaintiff would only need to show that the misrepresentations caused the removal in order to recover compensatory damages flowing from the removal. Defendants now challenge this, arguing that causation is an element of plaintiffs' misrepresentation claim that they must prove in order to prevail.

As support, plaintiffs rely exclusively on judicial deception claims under the Fourth Amendment in the criminal context. *See Franks v. Delaware*, 438 U.S. 154 (1978)

(considering whether a criminal defendant has a right under the Fourth Amendment to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant); *Betker v. Gomez*, 692 F.3d 854 (7th Cir. 2012) (considering whether false statements made in an affidavit supporting a no-knock warrant violated plaintiff's Fourth Amendment rights); *Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009) (considering a judicial deception claim under the Fourth Amendment); *Grubbs v. Bailes*, 445 F.3d 1275 (10th Cir. 2006) (analyzing whether false statements used to justify an arrest violated plaintiff's Fourth Amendment rights); *Beauchamp v. City of Noblesville*, 320 F.3d 733 (7th Cir. 2003) (considering whether officers violated plaintiff's Fourth Amendment rights by causing him to be arrested without probable cause); *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) (considering whether obtaining a court order used to gain entry into plaintiff's home based on false information violates the Fourth Amendment); *Olsen v. Tyler*, 771 F.2d 277 (7th Cir. 1985) (considering whether an officer who submits false statements in an affidavit supporting a warrant acted in an objectively reasonable manner). Because these cases relate to Fourth Amendment claims and not procedural due process claims, I do not find them to be persuasive. These Fourth Amendment cases all deal with the right to be free from unreasonable searches, or in other words the right to "a fair and reliable determination of probable cause by a judicial officer." *Olsen*, 771 F.2d at 282. In contrast, procedural due process protects an individual's right to adequate procedure in and of itself regardless of whether the procedural inadequacy affected the outcome. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("'It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate

2

outcome of a hearing.'" (quoting *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972))).

Defendants argue that this distinction is not significant because a claim of judicial deception is always a procedural due process claim, whether brought in the context of a Fourth Amendment claim or a procedural due process claim. I disagree. The Fourth Amendment and the Due Process Clause protect different constitutional rights, and therefore claims under each provision must be analyzed differently. *Id.* at 258–59, 264–65 (noting that deprivations of different constitutional rights "must be considered with reference to the nature of the interests protected by the particular constitutional right in question")*; Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 485 (7th Cir. 2011) ("[W]hether a seizure is substantively reasonable under the Fourth Amendment is independent of the question of what process is due."). The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Thus, to prove a violation of the Fourth Amendment, a plaintiff must ultimately show that the actual search or seizure was unreasonable, and in judicial deception claims under the Fourth Amendment that is done by showing that absent the misrepresentations, the search or seizure was unsupported by probable cause. However, the Due Process Clause protects an individual's right to certain procedural protections before being deprived of a liberty or property interest. U.S. Const. amend. XIV, § 1. Unlike in a Fourth Amendment claim, it is the procedural error itself that is the constitutional violation, not the result of the procedural error. Even if the outcome is otherwise justified, procedural due process rights are "absolute," and a violation alone is enough to prevail. *Carey*, 435 U.S. 247[1]; *see also*

---

[1] In *Carey v. Piphus*, plaintiffs were suspended from school without adequate procedures. The Court held,

*Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1020 n.16 (7th Cir. 2000) (distinguishing between a violation of a substantive due process right, defined as a situation in which the "removal was not justified," and a violation of a procedural due process right, defined as a situation in which "the manner in which the deprivation occurred violates procedural norms"); *Owen v. Lash*, 682 F.2d 648, 651–52 (7th Cir. 1982) ("[A] determination that governmental action violated a citizen's right to procedural due process is merely a condemnation of the procedures that attended the action and not an assessment of the constitutionality or propriety of the action itself.").

Here, plaintiffs had a procedural due process right to not have defendants misrepresent facts to justify removal their children. *Brokaw*, 235 F.3d at 1020 ("[N]o matter how much process is required, at a minimum it requires that government officials not misrepresent the facts in order to obtain removal of a child from his parents."); *id.* at 1021 ("Because [plaintiff] claims that he was removed based on knowingly false statements of

---

Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. . . . Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not the exceed one dollar.

435 U.S. at 266–67 (citations omitted). Federal courts continue to apply this rule. *See, e.g.*, *Hamdi v. Rumsfeld,* 542 U.S. 507, 530 (2004) (citing *Carey* with approval); *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (citing *Carey* with approval); *Harden v. Pataki*, 320 F.3d 1289 (11th Cir. 2003) (concluding that plaintiff may recover nominal damages for procedural violations in his extradition proceeding even if the extradition was justified).

4

child neglect . . . he has stated a procedural due process claim."). This is because state court proceedings based on deliberately false statements do not afford a party the opportunity to be heard in a meaningful manner. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To prevail on this claim plaintiffs must show that defendants knowingly misrepresented facts or acted in reckless disregard for the truth. This is enough to recover nominal damages.

**B.    Causation**

If plaintiffs wish to recover compensatory damages, they will have to show that the due process violation, that is the alleged misrepresentations, caused their injuries. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Carey*, 435 U.S. at 264. I assume that plaintiffs will argue that their injuries flowed from the children's removal; therefore, in order to show that the misrepresentations caused their injuries, they will also have to prove that the misrepresentations caused the removal. Defendants argue that the question of whether the misrepresentations caused the removal is a legal question for me and not the jury because, in essence, the question of causation is a probable cause determination. Defendants again cite judicial deception cases under Fourth Amendment cases which hold that the ultimate question of whether a search is reasonable, in other words whether after omitting the alleged misrepresentations there was still probable cause to justify a warrant, is a legal question. *See Ewing*, 588 F.3d at 1224; *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

Again, the nature of the Fourth Amendment cases cited is fundamentally different from this case. Causation is a legal element of a judicial deception claim under the Fourth

5

Amendment; in order to prevail, a plaintiff must prove not only that statements supporting probable cause were lies, but also that without those statements, there was not enough to justify probable cause for the search. As noted above, this causation element is required because the alleged constitutional violation is the search itself. The alleged constitutional violation in plaintiffs' procedural due process claim, however, is constitutionally inadequate procedure; therefore whether the removal was otherwise justified is not relevant to liability. *See Carey*, 435 U.S. at 266–67.

Rather in a procedural due process claim, the issue of causation is relevant to compensatory damages. *Farrar*, 506 U.S. at 112; *Carey*, 435 U.S. at 264. The issue of compensatory damages is a question for the jury. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 776 (7th Cir. 1994). The causation question in the context of compensatory damages is much more than a simple probable cause determination. If plaintiffs argue that their damages flowed from the removal, then they will have to prove that the alleged misrepresentations caused the removal, or in other words, that without the misrepresentations, there would not have been probable cause to justify removal. But they will also have to prove that the removal, in turn, caused them damages, and they will have to prove a dollar amount appropriate to compensate for those damages. Thus, although I agree with defendants that in the context of Fourth Amendment claims where the sole question is whether there would have been probable cause for a warrant after the alleged misrepresentations are omitted is a purely legal question, here the question of compensatory damages is much more than just that and involves a series of fact determinations best left to the jury. *See, e.g.*, *E. St. Louis Laborers' Local 100 v. Bellon*

6

*Wrecking & Salvage Co.*, 414 F.3d 700, 706 (7th Cir. 2005) (describing causation bearing on damages as an issue of fact). Therefore, I will ask to jury to consider the issue compensatory damages, which may require them to determine whether the alleged misrepresentations caused the removal.

## C. Qualified Immunity

At summary judgment, I concluded that defendants were not entitled to qualified immunity on the plaintiffs' procedural due process claim because the alleged constitutional violation, misrepresenting facts in order to obtain removal of children, was clearly established at the time. Decision & Order at 9–10 (ECF No. 41) (citing *Brokaw*, 235 F.3d at 1020). Defendants now argue that they are entitled to qualified immunity, or that they may be entitled to qualified immunity after trial. Their argument is based on Fourth Amendment law regarding when an officer has probable cause to arrest, which holds that even if the probable cause did not exist for the arrest, an officer is still immune if there was "arguable" probable cause. *See Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Defendants attempt to analogize themselves to officers, arguing that even if it is determined that there was not in fact probable cause to remove the children, they still had "arguable" probable cause to remove the children and may therefore still be entitled to qualified immunity. Again, they argue that this probable cause determination is a legal question I will need to answer after trial.

Defendants' analogy to this Fourth Amendment case law is not persuasive. Plaintiffs' remaining claim is not that defendants removed the child from the home without probable cause; it is that they intentionally misrepresented facts to the judge in order to

7

justify removal. Thus, whether or not defendants reasonably believed they had probable cause to remove the children is irrelevant; the alleged constitutional violation is misrepresentations that led to a constitutionally inadequate hearing. Thus, if the jury concludes that plaintiffs intentionally lied to the court or acted in reckless disregard for the truth in the TPC requests, TPC hearing, or CHIPS petitions, that in and of itself is enough to remove the protection of qualified immunity, and I need not make any determination as to whether a reasonable social worker could have believed that probable cause existed.[2]

## D.    Permanency Plan Reviews

At the pretrial conference, I concluded that plaintiffs would be limited to introducing only alleged misrepresentations that were made to the state court in support of removal or continued out-of-home placement. It was my understanding that this limited plaintiffs to introducing statements made in the temporary physical custody ("TPC") requests, at the TPC hearing, and in the petitions for protection or services ("CHIPS petitions"). Plaintiffs argued that the state court also considered placement at several permanency plan review hearings and that statements from those hearings should also be admissible. Plaintiffs now, however, concede that statements made after the CHIPS petitions were filed did not affect placement and are thus irrelevant. Thus, my ruling at the final pretrial conference

---

[2] Even if I were to accept defendants' analogy to judicial deception cases under the Fourth Amendment, defendants' argument would still not be persuasive because these cases hold that the act of making deliberate false statements alone is objectively unreasonable and enough to remove the protection of qualified immunity. *See Ewing*, 588 F.3d at 1228 n.16 (noting that "qualified immunity is generally unavailable in judicial deception cases"); *Snell*, 920 F.2d at 698 (concluding that an officer's deliberate false statements are not objectively reasonable and are enough on their own to defeat qualified immunity); *Olsen*, 771 F.2d at 281 (stating that officers are immune only of they "acted in an objectively reasonable manner" and that an officer who knowingly submits false statements does not act in an objectively reasonable manner).

stands; plaintiffs are limited to introducing evidence of alleged misrepresentations made in the TPC requests, at the TPC hearing, and in the CHIPS petitions.

Plaintiffs also request that I not allow defendants to mention any comments made by the children or anyone else after filing of the CHIPS petitions based on the fact that they are not able to admit evidence of misrepresentations made after the filing of the CHIPS petitions. I will rule on this issue on an item-by-item basis as objections arise at trial. I will not allow defendants to introduce irrelevant information, including events that transpired after the filing of the CHIPS petition, that have no bearing on the placement decision. However, I foresee that statements the children made later may be admissible as impeachment material.

Finally, defendants ask me to dismiss two named defendants, Kimberly Quam and Kathryn Feiertag, based on this ruling because they were not involved in the case until after the CHIPS petitions were filed and therefore had no role in the alleged misrepresentations at issue. Plaintiffs do not oppose this motion, therefore I will grant it.

## E. Evidentiary Objections in Plaintiffs' Expert's Evidentiary Deposition

Finally, plaintiffs indicated at the final pretrial conference that they wish to introduce the evidentiary deposition of their damages expert Linda Gottlieb. However, there are several evidentiary objections I must rule on before this deposition is played for the jury.

## 1. Cured objections and answers that went beyond the scope of the question

There are several instances where defendants objected and the objection was later cured. Plaintiffs have agreed to edit out the objectionable portions of this testimony; therefore I will sustain these objections. Defendants also made several objections to

9

answers that went beyond the scope of the question. Plaintiffs do not address this in their reply brief, therefore I will sustain these objections as well. Thus, the following lines of the deposition transcript are inadmissible: pg. 21 lines 16–21; pg. 25–26 lines 24–12; pg. 26–27 lines 21–6; pg. 29 lines 1 (beginning with "subsequently")–19; and any other related testimony.

**2. Pages 33–34 and 117–18**

Next, defendants object when defendants asked, (1) "why should we believe that at the time [Colten] was being honest, that he wasn't hiding information, that he was being forthright with the police officer and the social worker?" and (2) "How do you square the difference between the statements made to a social worker and a police officer in July with contradictory statements he makes in June or allegedly makes in June to a social worker?" Defendants argue that this information is inadmissible because it invades the province of the jury. Plaintiffs argue that the information is relevant to their theory of damages.

I will sustain these objections. Gottlieb opines that Stephanie, plaintiffs' Ron and Linda's older daughter and the person with whom the children were placed after removal, intentionally set out to alienate Chelsey and Colten from their parents, and that part of this process was encouraging the children to believe stories that didn't actually happen.[3] Thus, she ultimately opines that Colten's earlier version of events is more credible than the later

---

[3] It is unclear to me how Stephanie's alleged alienation is relevant to plaintiffs' damages. To prove compensatory damages, plaintiffs must prove that alleged misrepresentations caused their injuries. Any emotional distress caused by Stephanie's actions is irrelevant. However, Gottlieb's alienation theory is arguably relevant to the truth of the statements made to the court and to the credibility of the children's stories, therefore I will not exclude any portion of Gottlieb's testimony that defendants have not specifically objected to.

10

version because the earlier version had not been tainted by Stephanie's influence. However, credibility determinations are the province of the jury, and a witness may not testify as to ultimate credibility issues. *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury–determining the credibility of witnesses."). Thus, Gottlieb may not opine on the ultimate issue of whether a particular witness is telling the truth or not. Therefore, the following lines of the deposition are inadmissible: pg. 33–34 lines 10–25; pg. 117–118 lines 18–15; and any other related testimony.

### 3. Pages 36–40 and related statements

Next, defendants object to Gottlieb's testimony about how the social workers contributed to the emotional damage of the children. Specifically, Gottlieb opines that the social worker's decision to place the children with Stephanie, decision to ask the children to prepare lists of their complaints against their parents, and failure to check with "collateral sources" before removing the children contributed to the emotional damage to the children. Plaintiffs respond that this testimony is relevant because "plaintiffs' [sic] must prove in this case that the actions of the social workers . . . caused or contributed to the emotional damage suffered by the children." Pls.' Br. in Opp'n to Defs.' Mot. Regarding Evidentiary Dep. of Linda J. Kase-Gottlieb at 3 (ECF No. 72).

I will sustain defendants' objections. Plaintiffs mis-state what they must prove in this case. First, in order to prove liability, they must show that defendants knowingly or with reckless disregard for the truth made false statements to the state court judge in the TPC

11

requests, TPC hearing, and/or CHIPS petition to support out-of-home placement. To obtain compensatory damages, they must show that these misrepresentations caused the named plaintiffs' emotional. Whether other actions taken by the social worker caused emotional distress or damage is irrelevant. Therefore, the following lines of the deposition are inadmissible: pg. 36–40 lines 25–13; pg. 48–49 lines 5–20; and any other related testimony.

**4. Pages 40–48 and related statements**

Defendants also object to Gottlieb's testimony about a report authored by Dr. Kane, a psychologist who examined the children in the underlying CHIPS proceeding and recommended out-of-home placement. Defendants argue that this opinion should be inadmissible because it was never disclosed in Gottlieb's expert report and because her opinion goes beyond the scope of the relevant trial issues. Plaintiffs agree to exclude this testimony if Dr. Kane does not testify but argue that if he testifies, Gottlieb's testimony regarding his report is relevant to explain the discrepancies between what the children told Dr. Kane and what they told others later, as this is relevant to their alienation theory.

I will sustain defendants' objections. Fed. R. Civ. P. 26(a)(2)(B) requires parties to disclose written expert reports containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Plaintiffs do not address defendants' argument that this information is not admissible because it was not disclosed in Gottlieb's expert report, and after reviewing her expert report and two discovery depositions, I find no mention of Dr. Kane or his report. Thus, I will sustain the objection on this basis.

Additionally, I find that much of Gottlieb's testimony is not relevant to the issues that

12

remain. Much of it pertains to the quality of the investigation, which I have already dismissed on summary judgment, and much of it pertains to her opinions of decisions made after the CHIPS petitions were filed and thus is irrelevant. Gottlieb also brings up abuse allegations that were not known or included in the CHIPS petitions that are therefore irrelevant. Plaintiffs argue that it is relevant to their alienation theory because Gottlieb opines that much of what they told Dr. Kane was a lie. But the children's statements to Dr. Kane were made after the CHIPS petitions were filed, thus I fail to see how whether the children's statements to Kane were lies is relevant to plaintiffs' case. I also do not find plaintiffs' argument that this testimony is admissible because defendants are calling Kane as a witness. It is my understanding that Kane's testimony is primarily for the purpose of impeaching Chelsey, who defendants anticipate will testify differently than what she told Dr. Kane. Use of Dr. Kane for impeachment does not open the door to expert testimony criticizing his investigation and methods after the CHIPS petitions were filed. Therefore, the following lines of the deposition are inadmissible: pg. 40–48 lines 15–4; pg. 106–112 lines 23–11; page 116 line 8 (beginning "and then thirdly")–13; and any other related testimony.

**5. Pages 95–103**

Finally, defendants object to Gottlieb's testimony that Stephanie helped Chelsey create a list of complaints against her parents that were supposedly later used to draft the CHIPS petitions (although apparently the CHIPS petitions were filed before these lists were created). Defendants argue that this opinion was not disclosed in Gottlieb's expert report. Plaintiffs argue that this information is relevant to their alienation theory and thus admissible.

13

I will sustain these objections. Again, plaintiffs were required to disclose all expert

opinions in Gottlieb's expert report. Plaintiffs do not address defendants' argument that this

information was not disclosed, and I have found no reference to these lists in Gottlieb's

expert report. Additionally, these lists were created after the filing of the CHIPS petition. I

therefore fail to see how Gottlieb's opinions regarding actions that Stephanie, not the social

workers, took after the court had made decision to place the children out of home is

relevant. Therefore, the following lines of the deposition are inadmissible: pg. 95–103 lines

13 (beginning with "and she said it was clear to me that")–1; and any other related

testimony.

**THEREFORE, IT IS ORDERED** that plaintiffs only need to prove that defendants

intentionally misrepresented facts or acted in reckless disregard for the truth in the TPC

requests, TPC hearing, or CHIPS petitions to prevail on their procedural due process claim.

This will entitle them to nominal damages.

**IT IS FURTHER ORDERED** that the question of whether the alleged

misrepresentations caused the removal is relevant to compensatory damages and is thus

a jury question.

**IT IS FURTHER ORDERED** that defendants' unopposed motion to dismiss

defendants Feiertag and Quam (ECF No. 74) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' objections in Gottlieb's evidentiary

deposition are **SUSTAINED**. Plaintiff shall edit out the inadmissible portions of the video.

14

Dated at Milwaukee, Wisconsin this 5th day of November, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge